ALBANY,
January, 1822.

POWELL
v.
TRUSTEES OF
NEWBURGH.

POWELL and others *against* The Trustees of the Village of NEWBURGH.

Where the trustees of an incorporated village who were sued for an act done by them, *virtute officii*, in the faithful discharge of their duty, as trustees and agents of the corporation, incurred necessary costs and charges in and about their defence: *Held*, that they might maintain an action of *assumpsit* against the corporation, or their successors in office, for the amount of the costs and expenses so paid by them.

THIS was a special action on the case, tried at the *Orange* circuit, in 1820, before Mr. Justice *Woodworth*. The declaration contained the usual money counts. The following facts appeared in the case, which was agreed to by the parties, and made subject to the opinion of the Court. In *May* term, 1816, *George Gardner* commenced an action in this Court against the plaintiffs, who were then trustees of the village of *Newburgh*, for illegally and maliciously, as commissioners of streets and highways, in the said village, discontinuing a highway and street, and obstructing and shutting it up, so as to prevent its being travelled or used, to the great injury of the said *G.*, in his business and property, &c. The declaration in the said suit also charged the plaintiffs with wilfully and maliciously discontinuing and obstructing the highway or street, and stopping up a sluiceway for carrying off water, and turning the water into the store and house of the said *G.*, to the great injury of the grain, and other articles there deposited. The plaintiffs pleaded the general issue, and on the trial of the cause, at the *September* circuit, in 1817, a verdict was found in their favour, which the Court, afterwards, confirmed by their judgment. The plaintiffs, though trustees of the village when the acts complained of in that suit were done, were out of office when the suit was commenced, new trustees having been elected in their stead. The plaintiffs, as trustees of the village, were compelled, by an act of the legislature, passed the 25th of *March*, 1800, incorporating the said village, to take upon themselves the duties of their office, under a penalty of twenty dollars, on each of them, and to take an oath for the faithful performance of their trust. The present trustees had notice of the suit brought by *G.* against the plaintiffs, and of the amount expended by them in their defence. The plaintiffs, in and about their defence, expended a large sum of money over

and above the taxable costs, for the expenses of witnesses, hiring persons to serve the subpœnas, the attendance of witnesses, counsel fees, &c. the particulars of which were stated in the case. The plaintiffs frequently demanded payment of the amount of these expenses from the defendants, and from their predecessors in office, but the payment was always refused.

ALBANY,
January, 1822.

POWELL
v.
TRUSTEES OF
NEWBURGH.

It was agreed, that if the Court should be of opinion that the plaintiffs were entitled to recover, then judgment should be entered against the defendant, for the amount to be ascertained by the Court, as upon a verdict.

*P. Ruggles*, for the plaintiff. If the demand of the plaintiff be well founded, he may recover of the defendants as a corporation. (*Danforth* v. *Schoharie Turnpike Co.*, 12 *Johns. Rep.* 227. *Dunn* v. *St. Andrew's Church*, 14 *Johns. Rep.* 118. *Randall* v. *Van Vechten, ante* 60.) By the act relative to the village of *Newburgh*, (sess. 23. ch. 54. 2 *K. & R.* ed. 212.) the freeholders and inhabitants are declared a corporation, and are empowered to elect *trustees*, whose duties are prescribed; and they are to take an oath for the faithful execution of their trust or office, and are subjected to a penalty, if they refuse to act. The trustees are empowered to make regulations relative to streets, alleys and highways, and draining and filling them up, and paving, &c. and improving the same, &c. By the "act vesting further powers in the trustees of the village of *Newburgh*," (sess. 36. ch. 116. s. 1, 2.) they are vested with full and exclusive power to lay out all streets, roads, and highways, and to shut up, divert, or discontinue any street, road, or highway, within the village. They are authorized to act, in all respects, as *commissioners of highways*. The acts done by the plaintiffs, and for which they were sued by *Gardner*, were done by them, *virtute officii*, as trustees, and for those acts they were justified as having acted lawfully and correctly. The question, then, is, whether, having been compelled to expend money in their defence, in consequence of acts done by them as trustees and agents of the corporation of *Newburgh*, the law does not raise an implied *assumpsit* on the part of that corporation, to reimburse them the

ALBANY,
January, 1822.

POWELL
v.
TRUSTEES OF
NEWBURGH.

amount so paid ? The damages, costs and charges incurred by an agent, in the course of his management of the affairs of his principal, or in consequence of such management, are to be borne by his principal, where there is no fault in the agent. (*D'Arcy* v. *Lyle,* 5 *Binney's Rep.* 441. 450. 3 *Binney's Rep.* 295. 3 *Caines' Rep.* 226. 244. 1 *Esp. N. P. Rep.* 1. *Ramsay* v. *Gardner,* 11 *Johns. Rep.* 439.) This is a well established principle of law and equity.

A *trustee,* according to the settled rule of a Court of Chancery, is to be paid all his necessary costs and charges, independent of the ordinary taxable costs. (2 *Ch. Cases,* 133.) And the *cestui que trust* is bound to save the trustee harmless, as to all damages relating to the trust. (2 *P. Wms.* 455. 2 *Madd. Ch.* 132.) If a surety, says Lord *Kenyon,* in *Exall* v. *Patridge,* (8 *Term Rep.* 308.) is compellable to pay the debt, and does pay, he may maintain an action against his principal for the money paid, though he paid the debt without being requested by his principal. So, if a stranger's goods on the premises of another, are distrained for rent in arrear, and he is obliged to pay the rent to redeem his goods, he may maintain *assumpsit* against the lessees for money paid to their use. If a broker, who has entered into a contract for the sale of stock, at a future day, by the authority of his principal, who, afterwards, refuses to fulfil the contract, pays the difference, he may maintain a special action on the case against his principal, to recover the amount of the difference so paid, though, being a voluntary payment by the broker, he could not maintain the action on an implied *assumpsit.* (*Child* v. *Morley,* 8 *Term Rep.* 610.)

*Betts,* contra. There is no case where an agent, sued *ex delicto,* for his acts, though acquitted, has ever been allowed to maintain an action to be reimbursed his expenses. *Gardner* sued the plaintiffs for an *abuse* of their power and authority as trustees. Suppose the plaintiffs had failed in their defence, and had been compelled to pay heavy damages and costs, could they have brought their action against the defendants, or the corporation, to be indemnified ? In the case of *D'Arcy* v. *Lyle,* the agent was coerced to pay money a second time, after he had paid it over to

his principal. It was not a case of costs and expenses at-
tending the agency. In *Moses* v. *Murgatroyd*, (1 *Johns. Ch.
Rep*. 473. 477.) the Court would not allow the administrator
to be charged with the costs *personally ;* but no farther than
the *assets* of the intestate in his hands. In the case of
*Stocking* v. *Sage*, (1 *Day's Conn. Rep*. 519.) there was an
*express* promise by the principal to indemnify the agent ;
and the Court said, it was not within the statute of frauds,
but might be proved by parol.

ALBANY,
January, 1822.

POWELL
v.
TRUSTEES OF
NEWBURGH.

SPENCER, Ch. J. delivered the opinion of the Court.
On the argument of the cause, I confess the inclination of
my mind was strongly against the plaintiff's right to reco-
ver ; but subsequent reflection and examination has led me
to a different conclusion.

I will state some adjudged cases, that bear strong analo-
gy to the present, and then deduce some general rules from
them. In *Ramsay* v. *Gardner*, (11 *Johns. Rep*. 439.) the
defendant, being in want of money, applied to the plain-
tiff to inform him how he should draw a sum of money
from a relation in *Scotland ;* it resulted in the defendant's
drawing a bill, which the plaintiff endorsed and negotiated ;
the bill was returned protested, and the plaintiff had to pay
20 per cent. damages. It was objected to the plaintiff's
recovery, that the plaintiff was not authorized to sell the
bill, but that having done so, and become liable in damages,
it was his own fault, and he ought to bear the loss. It was
decided, that the plaintiff acted as the defendant's agent in
the negotiation of the bill, without any expected benefit ;
that the damages were paid by the plaintiff as agent ; and
judgment was given for the plaintiff. In *Exall* v. *Patridge
and others*, (8 *Term Rep*. 308.) the plaintiff's goods happen-
ed to be on premises chargeable with rent ; they were dis-
trained for rent in arrear, and the plaintiff was obliged to
pay the rent to redeem them ; it was held, that he might
maintain an action for money paid to the use of the origi-
nal lessees, who were bound by covenant to pay the rent.
In *Child* v. *Morley*, (8 *Term Rep*. 610.) the plaintiff, a bro-
ker, contracted, by the authority of the defendant, for the
sale of stock at a future day ; the defendant refused to

ALBANY,
January, 1822.

POWELL
v.
TRUSTEES OF
NEWBURGH.

make good the bargain by paying the difference, whereupon the plaintiff paid the difference, and brought his action against his employer; it was decided, that the broker might recover in a special action on the case, but not on an implied promise, because he had paid the money voluntarily. In the case of *D'Arcy* v. *Lyle,* (5 *Binney's Rep.* 441.) it was decided, that damages incurred by an agent, without his own fault, in the management of the principal's affairs, or in consequence of such management, must be borne by the principal. The case was thus : The plaintiff went to *Cape Francois,* with a power of attorney to demand a debt from *Suckley & Co.* there. On the voyage, the power of attorney was lost. He stated this to *S. & Co.* who consented to deliver up the goods of the defendant ; but before the goods were delivered, they were attached by the creditors of *S. & Co.* The plaintiff interposed a claim in behalf of the defendant, and the goods were delivered to the plaintiff, by the decree of the chamber of justice. The plaintiff then sold the goods, and remitted the proceeds to the defendant. The plaintiff was, afterwards, compelled, in an arbitrary manner, and by duress, to let judgment go against him, at the suit of the attaching creditors, upon false allegations, and was compelled to pay them their claim. It was held, that the plaintiff might recover of the defendant, his principal, the amount thus paid, not exceeding the value of the defendant's goods. Ch. J. *Tilghman* expressed his approbation of the law, as laid down by *Heineccius,* b. 13. p. 269, 270. (*a*) and 2 *Ersk. Inst.* 534. that damages incurred by an agent, or in the course of the principal's affairs, or in consequence of such management, were to be borne by the principal. It was admitted, that where an agent, on a journey, on business of his principal, was robbed of his own money, the principal would not be answerable, because carrying his own money was not necessarily connected with the business of his principal. So, if he received a wound, the principal is not bound to pay the expense of the cure, for it was the personal risk of the agent. The distinction

(*a*) *Heinec. Op.* tom. 1. *Elem. Jur. Nat. et Gent.* lib. 1. c. 13. s. 349. *Et vide, Poth. Trait. du Contrat de Mandat,* ch. 3. s. 1. art. 1. s. 2. s. 3. n. 68—78. *Domat,* B. 1. tit. 15. s. 2. § 6. *Dig.* lib. 17. tit. 2. 1. 26. tit 11. 1. 52. 61.

appears to be, between those cases which arise naturally out of the agency, and such as are casual, or *oblique*, not proceeding directly from the execution of the mandate. Upon this principle stands the doctrine of contribution towards a general average ; where the owner of a vessel cuts away a mast, to avoid impending ruin, there the owners of goods are personally liable for the amount of contribution, on the ground that the act was done, by the general agent, for the safety of the property. In *Stocking* v. *Sage and others*, (1 *Day's Conn. Rep.* 522.) Ch. J. *Swift* laid down these principles, to which the other Judges agreed : " that where an agent, acting faithfully, without fault, in the proper service of the principal, is subjected to expense, he ought to be reimbursed. If sued on a contract made in the course of his agency, pursuant to his authority, though the suit be without cause, and he eventually succeeds, the law implies that the principal will indemnify him, and refund the expense ; for this he can maintain an action of *indebitatus assumpsit* ; and the proof of these facts will be sufficient to warrant the jury to find the promise." These principles are precisely applicable to this case : the plaintiffs were sued for an act done by them as the agents and trustees of the corporation, in the course of their agency, and pursuant to authority. They acted faithfully and without fault, and are entitled to recover, for every thing reasonably and necessarily disbursed in and about their defence, and which could not be included in the taxation of costs, in the judgment recovered against *Gardner*.

Judgment for the plaintiffs.